O

# United States District Court
# Central District of California

HYDRODYNAMIC INDUSTRIAL CO., LTD.,

           Plaintiff,

   v.

GREEN MAX DISTRIBUTORS, INC.,

           Defendants.

Case No. 2:12-cv-05058-ODW(JEMx)

**ORDER DENYING GREEN MAX'S MOTION FOR JUDGMENT AS A MATTER OF LAW [144]**

## I.   INTRODUCTION

Before the Court is Defendant Green Max Distributors, Inc.'s motion for judgment as a matter of law on the issue of obviousness of the '385 Patent. For the reasons discussed below, the Court **DENIES** Green Max's Motion, and directs the Clerk to enter Judgment on the Jury Verdict.[1]

## II.   FACTUAL BACKGROUND

On June 11, 2012, Hydrodynamic Industrial Company, Ltd. filed suit against Green Max alleging infringement of U.S. Patent No. 6,848,385 ("the '385 Patent"). (ECF No. 1.) The '385 Patent relates to an underwater motive device known as a sea

---

[1] Having carefully considered the papers filed in support of and in opposition to the instant Motion, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

scooter. On November 5, 2013, the parties proceeded to a jury trial. After a four-day trial, the jury rendered a verdict that Green Max willfully infringed the '385 Patent, assessed damages of an ongoing royalty payment of $45,567.00, and declined to hold the '385 Patent invalid for obviousness. (ECF No. 132.) After trial, Green Max moved for Judgment as a Matter of Law on the issue of obviousness of the '385 Patent. (ECF No. 131.)

Underwater motive devices such as the sea scooter, as described by the 385 patent, have been around since the 1950s. ('385 Patent 1:13–14.) But earlier sea scooters had a variety of problems: they were heavy, unsafe, difficult to ballast weight, and difficult to recharge and service. (*Id.* 1:44–46.)

All claims of the '385 Patent require (1) a rear main housing; (2) a motor; (3) manual supports; (4) a front cone removable from the rear main housing; (5) a switch to operate the motor; (6) a battery and battery compartment; (7) a removable water ballast; (8) a sealing structure between the rear main housing and the front cone and (9) a pressure fitting. (*Id.* 4:14–36.) In addition, claim 5 which depends on claim 1 adds the following additional elements: (1) starting the motor propeller slowly before reaching full speed; and/or (2) shutting down motor based on monitoring the current; and/or (3) shutting down motor based on voltage level of battery; and/or (4) shutting down motor based on temperature of motor; and/or (5) shutting down motor based on change in current in motor. (*Id.* 4:49–59.)

The '385 Patent thus improved upon the prior art by creating a less bulky design that utilizes an "o" ring-sealable battery chamber that enables the front wall to be removed. ('385 Patent 1:50–54.) This allows a user to easily adjust the ballast and makes the battery readily accessible for charging or servicing. (*Id.* 1:50–57.) Additionally, it improved on the safety by utilizing a microprocessor controlled motor to control acceleration. (*Id.* 1:57–61.)

/ / /
/ / /

### III. LEGAL STANDARD

A Motion for Judgment as a Matter of Law ("JMOL") is governed by Federal Rule of Civil Procedure 50. Rule 50(a)(1) permits a grant of JMOL "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1). To prevail on a motion for JMOL, a party must show that the jury's express or presumed findings are unsupported by substantial evidence or based on incorrect legal standards. *McGinley v. Franklin Sports, Inc.*, 262 F.3d 1339, 1350 (Fed. Cir. 2001).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1308 (Fed. Cir. 2010). In assessing the sufficiency of the evidence, the court must draw all reasonable inferences from the evidence in the light most favorable to the nonmovant. *Id.; Richardson–Vicks Inc. v. Upjohn Co.,* 122 F.3d 1476, 1479 (Fed.Cir.1997). The appropriate inquiry is whether a reasonable jury, given the facts before it, could have arrived at the conclusion it did. *Dawn Equip. Co. v. Ky. Farms, Inc.,* 140 F.3d 1009, 1014 (Fed. Cir. 1998). The court may not determine the credibility of the witnesses nor "substitute its choice for that of the jury between conflicting elements of the evidence." *Perkin–Elmer Corp. v. Computervision Corp.,*732 F.2d 888, 893 (Fed. Cir. 1984). In sum, only when the court is convinced that, when considering the record before the jury, no reasonable persons could have reached a verdict for the nonmoving party should it grant the renewed motion for JMOL. *Id.*

### IV. DISCUSSION

Green Max asserts that it is entitled to JMOL on the issue of obviousness because the jury's nonobvious verdict was not supported by substantial evidence.

A patent is invalid for obviousness "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a

3

whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103(a). The obviousness analysis asks whether a person of ordinary skill in the art at the time of invention "would have been motivated to combine the teachings of the prior art references to achieve the claimed invention, and that the skilled artisan would have had a reasonable expectation of success in doing so." *Procter & Gamble Co. v. Teva Pharm. USA, Inc.*, 566 F.3d 989, 994 (Fed. Cir. 2009).

Obviousness is a question of law based on underlying factual findings: (1) the scope and content of the prior art; (2) the differences between the claims and the prior art; (3) the level of ordinary skill in the art; and (4) objective indicia of nonobviousness—if any. *Broadcom Corp. v. Emulex Corp.*, 732 F.3d 1325, 1334 (Fed. Cir. 2013); *Graham v. John Deere Co.*, 383 U.S. 1, 17–18 (1966). Included within the validity presumption mandated by 35 U.S.C. § 282 is a presumption of nonobviousness that can only be overcome by clear and convincing evidence. *Perkin-Elmer*, 732 F.2d at 894.

Because obviousness is a mixed question of law and fact, the Court "first presume[s] that the jury resolved the underlying factual disputes in favor of the verdict [ ] and leave[s] those presumed findings undisturbed if they are supported by substantial evidence." *Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*, 688 F.3d 1342, 1356-57 (Fed. Cir. 2012); *Broadcom*, 732 F.3d at 1334. The Court then examines the ultimate legal conclusion of obviousness de novo to determine whether it is correct in light of the jury's factual findings. *Id.*

Green Max must demonstrate that the jury's nonobvious verdict was not supported by substantial evidence. Green Max must prove that the invention of the '385 Patent would have been obvious to a person having ordinary skill in the art ("POSITA")—that the POSITA would have been motived to combine the teachings of the prior art references before the jury and would have had a reasonable expectation of success in doing so. Because the jury did not make explicit factual findings in the

form of special verdicts, the Court must discern the jury's implied factual findings by interpreting the evidence consistently with the verdict and drawing all reasonable inferences in Hydrodynamic's favor. *DyStar Textilfarben GmbH & Co. Deutschland KG v. C.H. Patrick Co.*, 464 F.3d 1356, 1361 (Fed. Cir. 2006).

## A. Level of Ordinary Skill in the Art

The level of ordinary skill in the art is a factual inquiry. *Graham*, 383 U.S. at 17. The jury found all of the asserted claims nonobvious, necessarily meaning that the jury's implied determination of the POSITA must comport with a finding of nonobviousness. *See Kinetic Concepts,* 554 F.3d at 1019–20; *Duro–Last,* 321 F.3d at 1108–09.

Despite failing to adduce any evidence regarding the level of ordinary skill in the art at trial, Green Max now asserts that a POSITA is properly

> an individual with an undergraduate degree in Mechanical engineering or the equivalent of experience or someone with two years of college or special training in mechanical engineering or equivalent experience, or someone who builds takes apart, or repairs basic mechanical toys/devices are examples of persons having ordinary skill in the art of this case.

(DE 144 at 22). This is unsupported. Green Max failed to introduce at trial any evidence of the level or education and experience of persons working in the field, the types of problems encountered in the field, or the sophistication of technology.

There was no testimony or other evidence regarding how a designer of ordinary capabilities in the particular field at issue would view the differences between Green Max's sea scooter and the patent claims. Green Max's only witness—Green Max's President Greg Meske— testified that it was not until 2003 or 2004 that he saw a sea scooter similar to the Sea-Doo sea scooter. (Brooks Decl. Ex. C. at 101:9-15). Further, it was not until 2005 that he purchased a Sea-Doo sea scooter and opened up the product for examination. (*Id.* 101:16–24.) Most problematically, Meske testified that prior to October 25, 2002, he had no knowledge of any person or business manufacturing or developing a sea-scooter-like product or water-sport-related devices.

1  (*Id.* 124:1–11.)  Accordingly, the jury lacked an evidentiary basis on which to adopt
2  Green Max's definition of a POSITA, and thus the Court cannot do so either.

3  Green Max argues that it was not required to introduce evidence of the level of
4  ordinary skill in the art because when the subject matter of the asserted patents and the
5  prior art is easily understandable, the prior art itself reflects the level of ordinary
6  skill—making a factual determination of the level of skill in the art unnecessary.
7  Green Max contends that both the '385 Patent and the applicable prior art involve
8  "relatively straightforward mechanical systems with a relatively small number of main
9  components."  (DE 144 at 21.)  The Court does not opine as to the simplicity or
10 straightforwardness of the prior art, but declines to adopt Green Max's assertion as to
11 the capabilities of the POSITA in so far as it is in tension with the jury's
12 determination that that an person of ordinary skill would not have been motivated to
13 combine the references.

14 **B.    Green Max failed to present evidence of motivation to combine at trial**

15 Whether a motivation to combine prior-art references has been demonstrated is
16 also a question of fact for the jury.  *McGinley*, 262 F.3d at 351.  Here, the jury found
17 all of the asserted claims nonobvious, necessarily meaning that it determined that
18 there were differences between the prior art and asserted claims and that an person of
19 ordinary skill would not have been motivated to combine the references.  *Kinetic*
20 *Concepts,* 554 F.3d at 1019–20; *Duro–Last,* 321 F.3d at 1108–09.  Thus, the Court
21 interprets the evidence consistently with the verdict and draws all reasonable
22 inferences in Hydrodynamic's favor.  *DyStar*, 464 F.3d at 1361.

23 Green Max argues that the jury determination of nonobviousness is not
24 supported by substantial evidence, because three prior-art references can be combined
25 to render the '385 Patent invalid.  Specifically, Green Max asserts that a POSITA
26 would have combined U.S. Patent No. 4,864,959 ("the '959 Patent") or the Oceanic
27 Mako user with the internal ballast disclosed by U.S. Patent No. 3,957,007 ("the '007
28 Patent") because the POSTIA "would have seen the benefits of doing so." (DE 144 at

8, 22.) But Green Max failed to present any evidence to the jury that supports these assertions.

Green Max presented no evidence of why a POSITA, at the time of the filing of the ʼ385 Patent, would have had the reason, suggestion, or motivation to combine the three prior-art references to which it now cites. There was no testimony or other evidence regarding how a POSITA would view the differences between the prior-art references and the patent claims, nor of any types of problems encountered in the field that would lead a POSITA to make these combinations. Green Max's conclusory statements are insufficient—Green Max must have "articulated reasoning with some rational underpinning to support the legal conclusion of obviousness." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 418 (2007).

Green Max attempts to argue that such evidence was not needed because the claimed invention was a predictable, beneficial variation of the prior art, which created an implicit motivation to combine that is technology independent. But the jury found all of the asserted claims nonobvious—implicitly rejecting this argument. And because the Court must view the evidence in the light most favorable to the verdict, all of these questions must be resolved against Green Max, and in favor of Hydrodynamic.

Moreover, Hydrodynamic introduced evidence sufficient for a juror to find that the invention claimed in the '385 Patent was not obvious. Joseph Lin—CEO of Sport Dimension, Inc., the distributor of the Sea-Doo sea scooter in the U.S.—testified at trial that he had purchased and examined the Oceanic Mako previously and determined that:

> It is entirely different from Sea-doo sea scooter. Furthermore, it does not have a water ballast, and also it does not have the circuit, the control circuit design is very different from ours. Also, it does not have air pressure to prevent water leakage. And, also, regarding the sealing, it uses a faced seal which is very different than the kind of sealing used by Sea doo sea scooter.

1  (Brooks Decl. Ex. A at 19:21-20:12). Lin additionally testified that the pressure-
2  removal system or pressure fitting allowed for ease in removing the water ballast, so
3  that "[y]ou can control the buoyancy by yourself." (*Id.* Ex. A at 23:15-25; Ex. D).
4  Finally, although Meske initially testified that the Oceanic Mako and Sea Doo sea
5  scooter similar in that they are similar in size and weight—at about 55 pounds—he
6  withdrew his statement that he was personally knowledgeable about the Oceanic
7  Mako after it was established at trial that Sea Doo sea scooter was much lighter. (*Id.*
8  Ex. C at 124:12–125:12)

9  Hydrodynamic also provided the jury with evidence of secondary
10 considerations that weigh in favor of a nonobvious determination by the jury. *Crocs*,
11 598 F.3d at 1310 ("Secondary considerations may often establish that an invention
12 appearing to have been obvious in light of the prior art was not." (internal quotation
13 marks omitted)). Hydrodynamic provided evidence that the Sea-Doo sea scooter
14 enjoyed acknowledged commercial success in the industry. (Brooks Decl. Ex A
15 42:19–24; 43:1–4; Ex.B 76:2–23.) Hydrodynamic also presented evidence that Meske
16 also intentionally copied the Sea-Doo sea scooter. (*Id.* Ex. C at 54:3–25.) Taken
17 together, the objective indicia of nonobviousness strongly supported a conclusion that
18 the claimed invention would not have been obvious at the time of invention.

19 Accordingly, there was substantial evidence to support the jury's finding of
20 nonobviousness—and a dearth of evidence to the contrary. Lacking an evidentiary
21 basis for a finding of obviousness, the jury reached the only reasonable verdict it
22 could—that the Green Max had not clearly and convincingly shown that the
23 '385 Patent is invalid for obviousness. Accordingly, Green Max's motion for
24 judgment as a matter of law on obviousness is denied.

25 / / /
26 / / /
27 / / /
28 / / /

## V. CONCLUSION

For the reasons discussed above, Green Max's Motion is **DENIED**. An order regarding the requested permanent injunction will issue. The Court directs the Clerk to enter Judgment on the Jury Verdict.

**IT IS SO ORDERED.**

May 9, 2014

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**