O

# United States District Court
# Central District of California

| | |
|---|---|
| HYDRODYNAMIC INDUSTRIAL CO LTD., a Hong Kong corporation,<br><br>Plaintiff,<br><br>v.<br><br>GREEN MAX DISTRIBUTORS, INC., a Washington corporation,<br><br>Defendant. | Case No. 2:12-cv-05058-ODW(JEMx)<br><br>**ORDER GRANTING PLAINTIFF'S APPLICATION FOR PERMANENT INJUNCTION [146]** |

## I. INTRODUCTION

Following a jury verdict finding that Defendant Green Max Distributors, Inc., wilfully infringed Plaintiff Hydrodynamic Industrial Company LTD.'s valid patent, Hydrodynamic requests that the Court enjoin Green Max from selling its X-treme sea scooters. (ECF No. 146.) Hydrodynamic argues that it has suffered, and will continue to suffer, irreparable harm from Green Max's infringing sales. Because the Court finds that the equitable factors weigh in favor of Hydrodynamic, the Court **GRANTS** Hydrodynamic's request. (ECF No. 146.)

///

///

## II. FACTUAL BACKGROUND

In the interest of judicial efficiency, the Court incorporates the factual background from its May 9, 2014 Order Denying Green Max's Motion for Judgment as a Matter of Law. (ECF No. 152.)

## III. LEGAL STANDARD

The Patent Act provides for injunctive relief to be granted "in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283. A patentee is not automatically entitled to an injunction upon a finding of liability. *See Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1379 (Fed. Cir. 2008). Rather, to be entitled to a permanent injunction, a patentee must satisfy the traditional four-factor test. The patentee must show that "(1) it has suffered an irreparable injury; (2) remedies available at law are inadequate to compensate for that injury; (3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction." *Apple Inc. v. Motorola, Inc.*, 2012-1548, 2014 WL 1646435 (Fed. Cir. Apr. 25, 2014) (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).

## IV. DISCUSSION

Hydrodynamic argues that the Court should enjoin Green Max's sale of its infringing X-treme scooter because it has caused, and will continue to cause, Hydrodynamic irreparable harm in the recreational-sea-scooter market. Green Max opposes the entry of a permanent injunction, ostensibly on the grounds that there is not a sufficient causal nexus between its infringement and Hydrodynamic's harm.

### A. Irreparable harm

Irreparable harm cannot be presumed from the mere fact of infringement. *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 735 F.3d 1352, 1359 (Fed. Cir. 2013) ("*Apple III*"). To demonstrate irreparable harm, a patent owner must show "(1) that

/ / /

absent an injunction, it will suffer irreparable harm, and (2) that a sufficiently strong causal nexus related the alleged harm to the alleged infringement." *Id.*

The irreparable-harm and the causal-nexus inquiries are "inextricably related concepts." *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 695 F.3d 1370, 1374 (Fed. Cir. 2012) ("*Apple II*"). The Federal Circuit has explained,

> [T]he accused product [may] sell almost as well without incorporating the patented feature. And in that case, even if the competitive injury that results from selling the accused device is substantial, the harm that flows from the alleged infringement (the only harm that should count) is not. Thus, the causal nexus [sic] inquiry is indeed part of the irreparable harm calculus: it informs whether the patentee's allegations of irreparable harm are pertinent to the injunctive relief analysis, or whether the patentee seeks to leverage its patent for competitive gain beyond that which the inventive contribution and value of the patent warrant.

*Id.* at 1374–1375. Although the causal-nexus inquiry is an integral part of the larger irreparable-harm inquiry, the Court addresses them separately for clarity.

1. *Causal Nexus*

Green Max contends that Hydrodynamic did not present sufficient evidence at trial to prove that the patented features drove the demand for the Sea-Doo sea scooter, or that consumers purchased Green Max's sea scooter because of the patented features. Hydrodynamic responds that it presented evidence at trial to demonstrate (1) that the patented features encompass both the internal and external elements of the sea scooter and (2) that those patented features—intentionally copied by Green Max—drove consumer demand for the sea scooter.

The causal-nexus inquiry is properly posed as "to what extent the harm resulting from selling the accused product can be ascribed to the infringement." *Apple II*, 695 F.3d at 1375. The connection must be more than tenuous—the patentee

/ / /

must demonstrate that the infringing features drive consumer demand for the accused product. *Id.*

Here, Hydrodynamic's causal-nexus evidence is a matter of merely connecting the dots. First, undisputed evidence at trial linked the patented features to the success of the Sea-Doo sea scooter. The '385 Patent improved upon the prior art by creating a safer, less-bulky sea scooter design that is easy to use and service. (*See* '385 Patent.) The inventions of the '385 Patent relate to both internal and external components of the Sea-Doo sea scooter, including the ballast, battery, control circuit, sealing structure, and housing. ('385 Patent; ECF No. 149 at Ex. A at 19:21–20:12, 23:16–25.) Hydrodynamic presented evidence at trial that these patented features redesigned the traditional industrial sea scooter into a device suitable for recreational consumer use—and, in turn, created a recreational-sea-scooter market. (ECF No. 151 at Ex. F at 41:21–25; 68:11–69:8.) Thus, the patented features propelled consumer demand for the Sea-Doo sea scooter in more than an anecdotal way.

Second, Hydrodynamic and Green Max are direct competitors in the recreational-sea-scooter-market. More than direct competitors, Hydrodynamic presented unrefuted evidence at trial that Green Max is Hydrodynamic's *sole* competitor.[1] (*Id.* at Ex. F 41:21–25.) And Green Max's President Greg Meske testified that he specifically sought to make an exact copy of Sea-Doo sea scooter—presumably because of its commercial success in this market. (*Id.* at Ex. G at 54:23–25.) Green Max did not present any countervailing evidence at trial to suggest that the patented features were less important than Hydrodynamic claims, or that any other unpatented, unprotectable features drive consumer demand for the sea scooters.

Accordingly, Hydrodynamic has met its burden to prove a causal nexus. Hydrodynamic demonstrated that consumers purchased the X-treme sea scooter because of the patented features. And Green Max directly copied the patented

---

[1] Although other sea scooters are available to consumers—including the prior-art references in this action—the Court is persuaded that there is a different market for these industrial sea scooters than for the comparatively diminutive sea scooters such as the Sea-Doo and X-treme scooters.

features—the same features that unrefuted testimony demonstrated were responsible for the transformation of the traditional sea scooter into one suitable for recreational use. Because the undisputed evidence (1) linked the claimed inventions of the '385 Patent to the Sea-Doo sea scooter's success and (2) established that Green Max directly copied the Sea-Doo sea scooter, Hydrodynamic has presented sufficient evidence to directly tie consumer demand for Green Max's sea scooter to the allegedly infringing features.

2. *Irreparable-harm factors*

Hydrodynamic asserts that it has been, and will continue to be, irreparably harmed by Green Max's sale of the X-treme scooter. The irreparable-harm inquiry endeavors to measure the harms that damages awards cannot remedy—such as "price erosion, damage to ongoing customer relationships, loss of customer goodwill (*e.g.*, when an effort is later made to restore the original price), and loss of business opportunities." *Celsis In Vitro, Inc. v. CellzDirect, Inc.,* 664 F.3d 922, 930 (Fed. Cir. 2012). There is sufficient evidence in the record to support a finding that irreparable harm to Hydrodynamic will continue if Green Max is permitted to continue selling the infringing scooters.

First, as previously mentioned, Hydrodynamic and Green Max are direct competitors in the recreational-sea-scooter-market. Evidence of a two-player market in which the patent holder is a direct-market competitor of the accused infringer serves as significant proof of irreparable harm. *See Apple II*, 678 F.3d at 1336. Such a relationship "creates an inference that an infringing sale [by the accused infringer] amounts to a lost sale for the patentee." *Id.* (quoting *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1151 (Fed. Cir. 2011)). Money damages are generally insufficient to compensate the patent holder because the infringement causes a direct, measurable loss of market share, customers, and access to potential customers, and causes irreversible price erosion. *Bosch*, 659 F.3d. at 1153.

Beyond this inferred harm, Hydrodynamic presented undisputed evidence of such harms at trial. Joseph Lin—CEO of Sport Dimension, Inc., the distributor of the Sea-Doo sea scooter in the U.S.—testified at trial that retailers threatened to not purchase or stop purchasing Sea-Doo sea scooters from Sport Dimension because of the X-treme scooters. (ECF No. 151 at Ex. F at 43:10–21.) Although the X-treme scooter is essentially identical to the Sea-Doo sea scooter, Green Max sells the X-treme scooter at a significantly lower price: the Sea-Doo sea scooter retails for $399 while Green Max's sea scooter retails for only $249. (*Id.* at 43:13–15.)

Lin pointed to West Marine and Costco USA as examples of retailers with whom Hydrodynamic lost business opportunities. (*Id.* at 44:25, 47:1–8.) Lin testified that Costco USA ceased purchasing sea scooters because the X-treme sea scooter was available cheaper online. (*Id.* at 47:25–48:24, 90:17-20.) This resulted in a loss of approximately $1.2 million in sales. (*Id.* at 47:9–11.)

And there is no reason to believe that Green Max will stop infringing absent an injunction. *See Reebok Int'l, Ltd. v. J. Baker, Inc.,* 32 F.3d 1552, 1557 (Fed. Cir. 1994) (recognizing that "future infringement . . . may have market effects never fully compensable in money"). Indeed, Meske continued to copy Sea-Doo sea scooters after receiving two cease-and-desist letters informing him of Hydrodynamic's patent.

Perhaps most importantly, Hydrodynamic asserts that the apparently identical sea scooters cause irreparable harm in the form of loss of goodwill. Hydrodynamic argues that the presence of the X-treme scooter in the market confuses consumers, which directly and negatively impacts Hydrodynamic. (ECF No. 151 at Ex. F at 43:8–44:15.).

Hydrodynamic also asserts that the inferior quality of the materials Green Max uses in the X-treme scooter have resulted in a loss of customer goodwill. Hydrodynamic presented evidence at trial regarding serious performance and service problems with Green Max's X-treme scooter. (Trial Ex. 45, ECF No. 151 Ex. F at 39:11–47:21.) Hydrodynamic received customer complaints from customers who

purchased the X-treme scooter believing it was one of Sea-Doo's sea scooters. (Ex. 45, ECF No. 151 at Ex. F at 39:11–47:21.) Accordingly, based on the unrebutted evidence presented at trial, the Court concludes that Hydrodynamic will continue to suffer irreparable harm from Green Max's infringement.

### B. Adequacy of money damages

Green Max contends that the fact that the jury awarded damages indicates that monetary damages are sufficient to compensate Hydrodynamic's harms. But Hydrodynamic disagrees.

First, the mere fact that a money-damage award can be computed does not preclude an irreparable-harm finding. *Celsis*, 664 F.3d at 930. Hydrodynamic has alleged multiple forms of harm. The fact that the jury awarded monetary damages does not necessarily mean that those damages captured the full extent of Hydrodynamic's injury. If this were the case courts would not award both damages and an injunction for the same infringement—which courts regularly do. *See, e.g.*, *Broadcom*, 732 F.3d at 1337–38; *Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1344–46 (Fed Cir. 2013); *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 702 F.3d 1351, 1363–64 (Fed. Cir. 2012); *Edwards Lifesciences AG v. CoreValve, Inc.*, 699 F.3d 1305, 1315–16 (Fed. Cir. 2012). Thus, Hydrodynamic's evidence that it cannot be fully compensated by the damages award is not necessarily undercut by the jury's damage award.

The Court finds that Hydrodynamic has presented sufficient evidence that money damages are insufficient to compensate it for its harm. First, as noted above, there is no reason to believe that Green Max will stop infringing, or that the harms resulting from Green Max's sales of the infringer X-treme scooter will cease, without an injunction. And unrefuted evidence established that Green Max is Hydrodynamic's sole competitor. Such a relationship militates against the adequacy of monetary damages.

/ / /

Additionally, as discussed previously, Green Max's X-treme scooter sales have caused and will continue to cause the loss of business opportunities. The Federal Circuit has confirmed that "the loss of customers and the loss of future downstream purchases are difficult to quantify, [and] these considerations support a finding that monetary damages would be insufficient to compensate Apple." *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 678 F.3d 1314, 1337 (Fed. Cir. 2012) ("*Apple I*"). Moreover, Green Max's infringement has resulted in a loss to Hydrodynamic of consumer goodwill. Lastly, the evidence shows that although Hydrodynamic utilized different distributors for the Sea-Doo sea scooter, it intentionally chose not to license the technology of the '385 Patent to maintain market exclusivity. (ECF No. 151 at Ex. G 78:5–14.) Accordingly, the Court concludes that remedies at law are inadequate to compensate Hydrodynamic for its harms.

**C. Balance of hardship**

The Court also finds that balance-of-hardships factor favors Hydrodynamic. This factor "assesses the relative effect of granting or denying an injunction on the parties." *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 861–63 (Fed. Cir. 2010).

Although a permanent injunction may never be utilized to punish an infringer, courts are not sympathetic to the hardship a party brings upon itself by undertaking knowing infringement. *See, e.g.*, *Smith Int'l, Inc., v. Hughes Tool Co.,* 718 F.2d 1573, 1581 (Fed.Cir.1983). Green Max took a calculated risk that it might infringe Hydrodynamic's patent when it copied the Sea-Doo sea scooter. Although Green Max attempted to invalidate Hydrodynamic's patent at trial, having failed, Green Max cannot now say that the balance of hardships tips in its favor. *See*, *id.*

Moreover, requiring Hydrodynamic to compete against its own patented invention—with the resulting harms described above—places a significant hardship on Hydrodynamic. On the other hand, if an injunction were granted, the sole effect on Green Max is that it would be unable to sell the single product that infringes the '385 Patent. This factor, therefore, favors entry of a permanent injunction in this case.

**D. Public Interest**

Finally, the Court finds that the public-interest factor also favors Hydrodynamic. The Federal Circuit has recognized that "the touchstone of the public interest factor is whether an injunction, both in scope and effect, strikes a workable balance between protecting the patentee's rights and protecting the public from the injunction's adverse effects." *i4i,* 598 F.3d at 863. Courts also consider "the harm that an injunction might cause to consumers who can no longer buy preferred products because their sales have been enjoined, and the cost to the judiciary as well as to the parties of administering an injunction." *Apple, Inc. v. Motorola,* 869 F. Supp. 2d 901, 921 (N.D. Ill. 2012).

Here, the injunction Hydrodynamic seeks is narrow. The injunction sought would merely prevent the sale of one specific product—the X-treme scooter—and its copyrighted user manual. Relief this narrow has less of an impact on the public. *See i4i,* 598 F.3d at 863.

Additionally, Hydrodynamic argues that Green Max's inferior sea scooter may potentially compromise the public's safety. Evidence and testimony was presented at trial to this effect. (Trial Ex. 45, ECF No. 151 at Ex. F at 39:11–47:21, 52:6–25.) Finally, the public interest favors the enforcement of patent rights to promote the "encouragement of investment-based risk." *Sanofi–Synthelabo v. Apotex, Inc.,*470 F.3d 1368, 1383 (Fed. Cir. 2006). Consequently, the public-interest factor also favors entry of a permanent injunction in this case.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

## V. CONCLUSION

Weighing all of the factors, the Court concludes that the principles of equity support the issuance of a permanent injunction in this action. Accordingly, for the reasons discussed above, the Court **GRANTS** Hydrodynamic's Motion for Preliminary Injunction. (ECF No. 146.) An order will issue.

**IT IS SO ORDERED.**

June 10, 2014

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**